# Exhibit C

1   .

2               IN THE UNITED STATES DISTRICT COURT

3             FOR THE WESTERN DISTRICT OF MISSOURI

4                      WESTERN DIVISION

5   .

6   .

7   RICHARD MITCHELL,

8              Plaintiff,

9       vs.                    Case No. 4:23-cv-00138-GAF

10  THE DIEZ GROUP, LLC,

11  d/b/a DIEZ GROUP, et al.,

12             Defendants.

13  .

14  .

15                      DEPOSITION OF

16                 RICHARD A. MITCHELL,

17  taken on behalf of the Defendants, pursuant to

18  Notice to Take Deposition, beginning at 10:00 a.m.

19  on the 9th day of November, 2023, at the law

20  offices of Seyferth, Blumenthal & Harris, LLC,

21  4801 Main Street, Suite 310, in the City of Kansas

22  City, County of Jackson, and State of Missouri,

23  before Cori R. Power, CCR, CVR, Kansas License No.

24  1739, Missouri License No. 1436.

25  .

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street
Topeka, KS 66604
785-273-3063

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

www.appinobiggs.com

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

```
 1                        APPEARANCES
 2    .
 3    .
 4  ON BEHALF OF THE PLAINTIFF:
 5    .
 6       Ms. M. Katherine Paulus
 7       Mr. Drew Russell
 8       Cornerstone Law Firm
 9       5821 Northwest 72nd Street
10       Kansas City, MO 64151
11       816-581-4040
12       m.paulus@cornerstonefirm.com
13       d.russell@cornerstonefirm.com
14    .
15    .
16  ON BEHALF OF THE DEFENDANT:
17    .
18       Mr. Robert J. Finkel
19       Finkel Whitefield Feldman
20       32300 Northwestern Highway, Suite 200
21       Farmington Hills, MI 48334
22       248-855-6500
23       rfinkel@fwf-law.com
24    .
25    .
```



Case 2:23-cv-00118-JAR Document 36-4 Filed 01/15/24 Page 3 of 25

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

1   No 2 was marked for identification.)
2       BY MR. FINKEL:
3       Q.   Do you remember that, Mr. Mitchell?
4       A.   Yes.
5       Q.   Okay.  Okay.
6            MR. FINKEL:  Is Exhibit 2 entered?
7            THE REPORTER:  (Nods head up and down.)
8            MR. FINKEL:  Okay.
9       BY MR. FINKEL:
10      Q.   All right.  So you were hired to a full
11  time position of a second shift maintenance
12  supervisor; is that correct?
13      A.   Yes.
14      Q.   Okay.  Okay.  And your second shift
15  hours, would -- would it be true they were from
16  4:30 p.m.  to 2:30 a.m.?
17      A.   Yes.
18      Q.   Okay.  So you were hired to work the
19  night shift; correct?
20      A.   Yes.
21      Q.   Okay.  Okay.  And you reported to Ryan
22  Vestal, the maintenance manager; is that correct?
23      A.   Yes.
24      Q.   Okay.  And the offer letter indicates
25  you'd be subject to a 90-day probationary period.

# RICHARD A. MITCHELL

1    Is that also accurate?

2         A.    Yes.

3         Q.    Okay.  And it also says you were an at-

4    will employee; is that correct?

5         A.    Yes, it does.

6         Q.    Okay.  And you signed that letter and

7    agreed to its terms; right?

8         A.    Yes, I did.

9         Q.    Okay.  Okay.  And you went through

10   orientation and training?

11        A.    I went through orientation -- I went

12   through -- yeah, training.  Yes, I did.  Watched

13   some video too.

14        Q.    Okay.  And you started, I think, on March

15   28, 2022; is that correct?

16        A.    Yeah.  March 28 I believe.

17        Q.    Okay.  Okay.  And the plant manager

18   during your employment was a guy named Matt Hunt?

19        A.    I don't remember.

20        Q.    Don't remember?

21        A.    Don't remember.

22        Q.    You don't remember Matt Hunt?

23        A.    No.

24        Q.    Okay.  Okay.  And do you remember Sharon

25   Melville -- Melvin was in charge of human

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

Case 2:23-cv-02012-DDC  Document 36-4  Filed 01/15/24  Page 5 of 25

1        A.    Well, Ryan never talked.

2        Q.    Okay.  Do you recall texting any --

3   anything about the conduits to Sharon Melvin?

4        A.    Don't remember that.

5        Q.    Okay.  Have any attendance issues when

6   your were there for that period of time you worked

7   at Diez?

8        A.    They wrote me up on one that I know of.

9        Q.    Okay.  So you started on March 28, 2022,

10  we know that.  And I think you worked the 28th

11  and the 29th, and do you recall you left after 30

12  minutes on March 30th?

13       A.    No.  Don't remember that.

14       Q.    Don't recall?

15       A.    No.

16       Q.    Okay.  Do you recall being absent on

17  March 31 and April 1st?

18       A.    Yes.

19       Q.    Okay.  Do you recall that you were a no

20  show, no call on April 23rd?

21       A.    Don't remember that.

22       Q.    Do you recall receiving an attendance

23  reprimand on April 27th?

24       A.    Yes.

25       Q.    Okay.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# RICHARD A. MITCHELL

1          MR. FINKEL:  5.

2          (THEREUPON, Mitchell Deposition Exhibit

3    No 5 was marked for identification.)

4     BY MR. FINKEL:

5     Q.    Do you recall receiving that, Mr.

6    Mitchell?

7     A.    Yes, I do.

8     Q.    Okay.  All right.  You were still a

9    probationary employee at -- during that time;

10   correct?

11    A.    Yes.

12    Q.    Okay.  So under the rules you could have

13   been terminated; correct?

14    A.    Yes, I could have.

15    Q.    But you weren't?

16    A.    No, I wasn't.

17    Q.    Okay.  So on May 19, 2022, you called

18   Sharon Melvin and said you'd been injured on the

19   job; is that right?

20    A.    Yes.

21    Q.    Okay.  And what kind of injury did you

22   describe to her?

23    A.    I described nothing to her.  I just told

24   her that I needed to go see the doctor, and she

25   told me to come in, and she gave me one of those

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

Case 2:23-cv-00133-HLT-TJJ   Document 36-4   Filed 01/15/24   Page 7 of 25

# RICHARD A. MITCHELL

1  slips to go see the -- our company doctor.

2      Q.   So you didn't tell her how you were

3  injured or what you were injured?

4      A.   No.  Never spoke to her.  She just told

5  me to come in.

6      Q.   Do you recall her asking you when the

7  injury happened?

8      A.   Yes.  She asked me when I came into her

9  office to get the slip to go to the doctor's

10  office -- I mean, go see the company's thing, and

11  I told her it happened last night.  That was it.

12      Q.   Okay.  You recall ever telling her that

13  when she asked you that, you said "Recently"?

14      A.   We never spoke on that.

15      Q.   Okay.  Do you recall telling her at any

16  time that it happened two, three weeks ago?

17      A.   No.

18      Q.   Okay.  So your claim that the injury took

19  place on May 18th?

20      A.   Yes.

21      Q.   Okay.  Do you recall Sharon asking you

22  where the injury occurred?

23      A.   Me and Sharon never spoke about that.

24      Q.   Okay.  Do you recall her asking you what

25  time the injury occurred?

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street
Topeka, KS 66604
785-273-3063

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

www.appinobiggs.com

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1     Q.   Are you talking about the coils?

2     A.   Yeah.  The coils.  Yeah, you have to,

3  like, get the -- the little inside pieces out.

4  And sometimes they are kind of stuck in there, and

5  then you have to kind of jerk and pull, you know,

6  to get them out.  And I guess in one particular

7  time I -- I pulled too hard, and it kind of

8  messed my back up.

9     Q.   Okay.  But you -- you first said to her

10 you were operating the crane like you said;

11 correct?

12    A.   Yes.  Operating the crane.

13    Q.   But you weren't operating the crane, you

14 were unwrapping the coils; correct?

15    A.   No.  The crane brings the coils to you.

16    Q.   Right.

17    A.   Yes.

18    Q.   Yeah, but you didn't get injured on the

19 crane?

20    A.   No.  I got injured pulling -- cutting

21 coils off and pulling, pulling it out.

22    Q.   Okay.  All right.  And -- and you pulled

23 it where -- what -- what happened?

24    A.   When I was pulling the coil?  When I was

25 pulling the plastic off?  The plastic sometimes be

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street
Topeka, KS 66604
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1   stuck, and you have to, like, pull real hard to

2   get it out, because it -- they so stuck in between

3   the coils, sometimes you have to, like, really

4   jerk and pull.

5        And so in this particular one it was stuck up

6   in there, and I had to, like, really reach in

7   there and had to, like, pull.  And then when I

8   was pulling back to pull back to get it out, it

9   kind of like -- I felt a little tug on my

10  shoulder, like oh, you know, like a little twitch

11  in my shoulder.  But I still finished the night

12  out.

13       Q.   Okay.  And you -- you didn't say anything

14  to your supervisor that night about the injury,

15  did you?

16       A.   I didn't have a supervisor.

17       Q.   Didn't have a supervisor?

18       A.   No.

19       Q.   There's no supervisor at the night shift?

20       A.   Not mine.  It was just a plant -- a

21  pedestrian supervisor.

22       Q.   Okay.  And sure you didn't report any

23  injury that night; correct?

24       A.   No.

25       Q.   Is that -- that correct or you didn't --

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS            Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1    A.    No.  I didn't -- I didn't report the

2  injury until that morning.

3    **Q.    Okay.  The next morning?**

4    A.    Yes.  The next morning.

5    **Q.    Okay.  And who did you report it to?**

6    A.    Sharon.

7    **Q.    Okay.  And again I'm asking you what did**

8  **you tell her?**

9    A.    I just called and told her that I was

10  hurt, you know, my shoulder was hurting, and just

11  in that conversation she say "You need to come and

12  take this form and go see the company doctor."

13    **Q.    So you did mention your shoulder?**

14    A.    Yes.

15    **Q.    Okay.  Before you just said you were**

16  **injured, and I asked you more specifically.  So**

17  **you told her you injured your shoulder; is that**

18  **correct?**

19    A.    Yeah.  I told her and showed her the day

20  that I went to see her about getting that form.

21    **Q.    And did you tell her that in person or**

22  **over the phone?**

23    A.    It was over the phone.

24    **Q.    Okay.  At the clinic, or --**

25    A.    No.  It was over the phone.  I talked to

Appino & Biggs
Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604        Suite 101               Suite 305
785-273-3063            Overland Park, KS       Wichita, KS 67202
www.appinobiggs.com     913-383-1131            316-201-1612

# RICHARD A. MITCHELL

1  her on the phone.

2      Q.   Oh, and that's when she told you to go to

3  the clinic?

4      A.   Yeah.  She told me to come down there and

5  get the form and go to the clinic.

6      Q.   Do you recall about what time it was?

7      A.   I can't remember.

8      Q.   Morning?

9      A.   It was morning.

10     Q.   Okay.  And do you know if your handbook

11  has any rules about -- or the company has any

12  rules about reporting an injury immediately?

13     A.   It might have in there.

14     Q.   It might.  Okay.  And a handbook, page 22

15  where it says "Reporting Safety Issues"?

16     A.   Yes.

17     Q.   Okay.  And I think on the third line it

18  says "You must contact your supervisor

19  immediately, no later than the end of the shift"?

20     A.   Yes.  I see that.

21     Q.   Okay.  But -- but your testimony is you

22  didn't have a supervisor?

23     A.   No.  Didn't have a supervisor.

24     Q.   Okay.  But you didn't report that to

25  anybody?

# RICHARD A. MITCHELL

1    A.   Not that night.  Yeah.

2    **Q.   Yeah.**

3    A.   I waited until the next day when somebody

4  was in the office.

5    **Q.   Okay.  Now you reported this injury the**

6  **next morning to Sharon?**

7    A.   Yes.

8    **Q.   Okay.  And how do you know you injured it**

9  **on this -- the coils?**

10   A.   Because I was working on them -- on the

11  coils that night.

12   **Q.   Okay.  And -- and you felt something.**

13  **You said you felt a twitch or something?**

14   A.   Yeah.  I felt, like, a little pull.

15   **Q.   A little -- little pull?  Okay.  But you**

16  **didn't think to report that little pull to anybody**

17  **at the company that -- that evening?**

18   A.   No.

19        MS. PAULUS:  Objection.  Sorry.  It's too

20  late now.

21        BY MR. FINKEL:

22   **Q.   Okay.  So when you -- you reported it to**

23  **-- the injury to Sharon, she told you to go to**

24  **the clinic; correct?**

25   A.   Yes.

# RICHARD A. MITCHELL

1      A.    Right.

2      Q.    Okay.  Are -- and you couldn't reach

3   above your shoulder or use your right shoulder?

4      A.    Right.

5      Q.    Okay.  And while you had these temporary

6   restrictions, you couldn't perform the maintenance

7   tech position, could you?

8      A.    No.   No.

9      Q.    Okay.  And did you get a -- the

10  maintenance tech position is --

11          MR. FINKEL:   7.

12          (THEREUPON, Mitchell Deposition Exhibit

13  No 7 was marked for identification.)

14     BY MR. FINKEL:

15     Q.    Okay.  Are you familiar with that job

16  description for the maintenance tech?

17     A.    Yes, I do.

18     Q.    Okay.  All right.  Did Sharon Melvin tell

19  you that there wasn't any light duty available for

20  you to work because you -- because of your

21  restrictions?

22     A.    No.  She told me that I -- I couldn't

23  come back to work until I was 100 percent.

24     Q.    Okay.  But clearly you couldn't perform

25  the maintenance tech job through that period of

Appino & Biggs Reporting Service, Inc.
5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS            Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1    time; correct?

2         A.    What do you mean?

3         Q.    **Well, with those -- the restrictions you**

4    **had.**

5         A.    Right, I could not.

6         Q.    **Yeah.  Okay.  But she -- she told you she**

7    **didn't have any light-duty work, but, you know,**

8    **you could follow -- just follow up with your**

9    **treatments?**

10        A.    Yes.

11        Q.    **Okay.  And did you have some physical**

12   **therapy treatments?**

13        A.    Yes.  I was going to physical therapy.

14        Q.    **Okay.  And you were ultimately released**

15   **to work a few weeks later; right?**

16        A.    A few weeks later?

17        Q.    **A few weeks later.**

18        A.    Yes.  A few weeks later.  Yes.

19        Q.    **Yeah, yeah.  I think -- I think it was on**

20   **January 9th?**

21        A.    No.  No January anything.

22        Q.    **I'm sorry, June 9th.  Excuse me.**

23        A.    It might have been June 9th.

24        Q.    **Yeah.  Okay.**

25              (THEREUPON, Mitchell Deposition Exhibit

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604            Suite 101                    Suite 305
785-273-3063                Overland Park, KS           Wichita, KS 67202
www.appinobiggs.com         913-383-1131                316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1  paragraph 25 you say that -- or you're claiming
2  that Sharon said you could not return to work
3  until you were 100 percent released to full duty,
4  because there was no light duty for you?
5      A.    Yes.
6      Q.    Okay.  And did she also tell you that,
7  you know, you had to be able to perform the job
8  with or without accommodation?
9      A.    With or without accommodation?
10     Q.    With or without accommodation.
11     A.    No.
12     Q.    No?  Okay.  So you were released to work
13 on June 9, 2022, so you could have performed your
14 job at that time; is that correct?
15     A.    That was when I come back to full duty,
16 yes.
17     Q.    Okay.  And in paragraph 28 it says doctor
18 told you you needed to begin physical therapy for
19 your injuries and keep your light duty
20 restrictions in place.  See that?
21     A.    Yes.
22     Q.    Okay.  Okay.  What type of therapy were
23 you doing?
24     A.    They just were working on my motions,
25 like my -- my pulling, my lifting, my

1    strengthening, just to see how much I can lift,

2    how much I can pull, how much I could push, you

3    know, determine how far out I am from being --

4    going back to work full duty.

5        Q.    Okay.  And how often did you go to

6    physical therapy?

7        A.    I don't remember.

8        Q.    Okay.  And did you continue that therapy

9    after June 9th?

10       A.    No.

11       Q.    No?  Okay.  So in Count 1 of your

12   complaint on page 5, you're basically saying that

13   The Diez Group retaliated against you for filing a

14   workers' comp claim; correct?

15       A.    Yes.

16       Q.    Okay.  And when did you file your

17   workers' comp claim?

18       A.    I think that within a day or two, day or

19   two, I would have been notified I was terminated.

20       Q.    Okay.  So a day or two after May 24?

21       A.    I believe so.

22       Q.    Okay.

23       A.    I don't really remember, but I'm

24   assuming.

25       Q.    Somewhere around that time you believe?

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street      6420 W. 95th Street      800 E. 1st Street
Topeka, KS 66604         Suite 101                Suite 305
785-273-3063             Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com      913-383-1131             316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1       A.    Yes.

2       Q.    **Okay.**

3             MS. PAULUS:  Can we take a break soon?

4    We've been going about an hour.

5             MR. FINKEL:  We can take a break anytime

6    you want.

7             MS. PAULUS:  All right.  I just didn't

8    want you to get into another question first.

9             (THEREUPON, a break was taken.)

10      BY MR. FINKEL:

11      Q.    **I believe the last question I asked you**

12   **was when you filed your workers' comp claim, and**

13   **you said one or two days after May 24?**

14      A.    Yes.

15      Q.    **Okay.  And nobody from The Diez Group**

16   **ever discouraged you from filing that claim, did**

17   **they?**

18      A.    No.

19      Q.    **Okay.  And no one ever made a negative**

20   **comment to you about filing that claim, did they?**

21      A.    No.

22      Q.    **Okay.  And you have the handbook in front**

23   **of you.  Directing you to page 28.**

24      A.    Workmen's comp?

25      Q.    **Yeah, workers' comp, in that first**

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
                           Overland Park, KS          Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# RICHARD A. MITCHELL

1        Q.   Okay.  All right.  And when you did

2   notify Sharon Melvin on, what was it, the 20 -- or

3   on -- on May 19th, she immediately sent you to the

4   clinic?

5        A.   Yes.

6        Q.   Okay.  And you did receive your Workers'

7   Compensation benefits; true?

8        A.   Yes.

9        Q.   Okay.  And the company never challenged

10   your right to receive those benefits, did it?

11        A.   No.

12        Q.   Okay.  And the company provided it --

13   well, I don't know if you know if the company

14   provided all the necessary information to the

15   workers' comp insured so you could get your

16   benefits?

17        MS. PAULUS:  Objection.  Calls for

18   speculation.

19        You can answer.

20        A.   I -- I don't know.

21        BY MR. FINKEL:

22        Q.   Okay.  What -- what evidence or facts do

23   you have to support your claim that the company

24   retaliated against you because you filed a

25   workers' comp claim?

Appino & Biggs Reporting Service, Inc.
5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 67202      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

1    duties.

2        Q.    Okay.  But you -- you can work; correct?

3        A.    Yeah, I can work, but not at a hundred

4    percent.

5        Q.    Okay.  All right.  On paragraph 50 of

6    your complaint it says you can perform the

7    essential functions of your job with or without

8    accommodation.  Is that true?

9        A.    No.

10       Q.    It's not true?

11       A.    You mean to this right here?

12       Q.    Yeah.

13       A.    To -- to what I -- hold on.  Let me see.

14   That would be true.

15       Q.    Okay.  So you -- you can perform your

16   essential functions?

17       A.    Yes.

18       Q.    Okay.  And during the period from May 19,

19   2022, through June 9, 2022, when you weren't

20   released to work, how could you perform the -- the

21   maintenance tech job with an accommodation?

22            MS. PAULUS:  I'm going to object that

23   it's argumentative.  Calls for a legal conclusion.

24   You can answer.

25       A.    No.  Back to -- back in -- back to June

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS          Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

1    perform the job.  I couldn't perform the job.

2        Q.    Okay.  With or without accommodation?

3            MS. PAULUS:  I'll object that it calls

4    for a legal conclusion.

5        You can answer.

6        A.    With accommodations, yes.  I couldn't

7    perform the job without accommodations.

8        BY MR. FINKEL:

9        Q.    Okay.  What accommodations would you need

10   to perform your job?

11       A.    Light duty.

12       Q.    But there wasn't any light duty available

13   you were told; correct?

14       A.    Right.  There's no light duty.

15       Q.    Okay.

16       A.    No light duty.

17       Q.    Okay.  So you couldn't do your

18   maintenance tech job; correct?

19            MS. PAULUS:  Objection.  Asked and

20   answered.  You can answer.

21       A.    Correct.  I couldn't perform it.

22       BY MR. FINKEL:

23       Q.    Okay.  Yeah.  I mean, the maintenance

24   tech job you needed to weigh -- lift more than 10

25   pounds; correct?



1      A.    Yes.

2      Q.    Okay.  And you've got to raise your

3  shoulder up to do your work.  And you never

4  requested any accommodation, did you, during that

5  period of time?

6           MS. PAULUS:  Objection.  Calls for a

7  legal conclusion.

8      You can answer.

9      A.    No.  I never requested anything.

10     BY MR. FINKEL:

11     Q.    Okay.  So in -- in your complaint, you

12 know, you claim that the company failed to

13 accommodate you; is that right?

14     A.    I was --

15          MS. PAULUS:  Objection.  Calls for a

16 legal conclusion.

17     You can answer.

18     A.    The failure to accommodate me.  Well, you

19 mean, like, give me light-duty work, or just come

20 back to work?

21     BY MR. FINKEL:

22     Q.    Well, I don't -- I'm asking you, because

23 that's what your complaint says that, you know, we

24 -- the company didn't accommodate you, and my

25 question is, you know, number one, you didn't

Appino & Biggs
Reporting & Technology Service, Inc.

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604            Suite 101                    Suite 305
785-273-3063               Overland Park, KS 66212       Wichita, KS 67202
                           913-383-1131                  316-201-1612
www.appinobiggs.com

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1   this is an assumption -- can't continue to see you

2   unless doctor -- unless the company say "Okay, we

3   need to send you further into therapy."  So based

4   off my work, my physical condition, no.

5        Q.   Okay.  And -- and who told you this, the

6   nurse at the clinic?

7        A.   Yeah, the nurse at the clinic.

8        Q.   Okay.

9        A.   Me and her was talking.

10       Q.   Okay.

11       A.   I thought -- I thought she had written it

12  all down.

13       Q.   Okay.  And we've gone over all the

14  conversations you had with Sharon during this

15  time; correct?

16       A.   Yes.

17       Q.   And -- okay.  Did Sharon ever make any

18  negative comments about you being disabled?

19       A.   No.

20       Q.   Okay.  And she just told you to continue

21  your treatments; correct?

22       A.   Yes.

23       Q.   Okay.  And you were on approved leave of

24  absence during that time; correct?

25       A.   Yes.



# RICHARD A. MITCHELL

1    Q.   Okay.  Are you aware of any Diez Group or
2    Delaco Group employee who failed to immediately
3    report an accident or an injury and was not
4    terminated?
5    A.   No.
6    Q.   Okay.  Are you aware of any Diez Group
7    employee who was counseled regarding poor
8    performance, had more than two attendance points,
9    and violated company rules that was not
10   discharged?
11        MS. PAULUS:  Objection.  Compound.
12   You can answer.
13   A.   None that I know of.
14   BY MR. FINKEL:
15   Q.   Okay.  Now, I think in your complaint you
16   claimed you have suffered emotional distress as a
17   result of the company's actions; correct?
18   A.   Yes.
19   Q.   Okay.  And can you explain to me your --
20   your distress?
21   A.   Yeah, I mean --
22   Q.   And your anguish and your humiliation?
23   A.   I mean, it's like -- I'm there thinking,
24   you know, I was going to come back to the job,
25   you know, after I had completed my -- my therapy

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Mission, KS 66212         Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# RICHARD A. MITCHELL

1    BY MR. FINKEL:

2        Q.    It's true during work you -- you text

3    Ryan back and forth?

4        A.    Back and forth?  I don't recall.

5        Q.    You don't recall ever texting Ryan?

6        A.    I don't remember.  I -- I do not.

7        Q.    What about texting Sharon?

8        A.    Yeah.

9        Q.    You text Sharon all the time; right?

10       A.    Yeah.

11       Q.    Okay.  And how -- how do you know, like,

12   when you got off work on the 18th and -- and you

13   woke up on the 19th and you felt the pain;

14   correct?

15       A.    Yes.

16       Q.    Is it possible that you slept wrong?

17       A.    No, I didn't sleep wrong.

18       Q.    How -- how do you know that?

19       A.    I know how I sleep.

20       Q.    Oh, okay.  All right.  In Exhibit 6 that

21   you're looking at, right under it says, "Return to

22   modified work duty."  It says below that what your

23   restrictions were?

24       A.    Yes.

25       Q.    "May lift up to 10 pounds, push and pull

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
Overland Park, KS 66212      Wichita, KS 67202
913-383-1131                 316-201-1612
www.appinobiggs.com

Case 2:22-cv-00133-JAR-GEB  Document 36-4  Filed 01/15/24  Page 25 of 25