# Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE WESTERN DISTRICT OF MISSOURI
 3                       WESTERN DIVISION
 4
 5   RICHARD MITCHELL,
 6                   Plaintiff,
 7   vs.                           No. 4:23-cv-00138-GAF
 8   THE DIEZ GROUP, LLC d/b/a
 9   DIEZ GROUP, et al.,
10                   Defendants.
11
12
13
14        REMOTE DEPOSITION OF SHARON MELVIN, a
15   Witness, taken on behalf of the Plaintiff before
16   Nissa M. Sharp, CSR No. 1365, CCR No. 528, pursuant
17   to Notice on the 13th of December, 2023, with all
18   parties, including the witness, appearing via mobile
19   videoconference.
20
21
22
23
24
25
```

MCR  11880 College Blvd., Suite 405  Overland Park, KS 66210  800.748.7511 · 913.347.9800 · FAX 913.347.9807  COURT REPORTING + LEGAL VIDEO

RICHARD MITCHELL vs                              DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                              December 13, 2023

Page 2

```
 1                        APPEARANCES

 2


 3    APPEARING FOR THE PLAINTIFF VIA MOBILE
      VIDEOCONFERENCE:
 4
              Ms. M. Katherine Paulus
 5            Mr. Drew Russell
              Cornerstone Law Firm
 6            5821 Northwest 72nd Street
              Kansas City, Missouri  64151
 7            (816) 581-4040
              m.paulus@cornerstonefirm.com
 8            d.russell@cornerstonefirm.com

 9

10    APPEARING FOR THE DEFENDANTS VIA MOBILE
      VIDEOCONFERENCE:
11
              Mr. Robert J. Finkel
12            Finkel Whitefield Feldman
              32300 Northweestern Highway
13            Suite 200
              Farmington Hills, Michigan  48334
14            (248) 855-6500
              rfinkel@fwf-law.com
15


16
      ALSO PRESENT:
17
              Mark Roseman, The Diez Group
18

19

20

21

22

23

24

25
```

RICHARD MITCHELL vs                                           DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                                         December 13, 2023

Page 5

1    doing a Zoom deposition because the court reporter
2    can't take down when two people or speaking
3    simultaneously.
4              So I'll just ask to be aware of that
5    and that you give me an opportunity to fully ask my
6    question, and, in turn, I'll be sure to give you an
7    opportunity to fully answer before I move on to my
8    next question.  And if at any time you're not
9    finished answering a question and I move on to the
10   next question, please just let me know.  I want to
11   make sure you have the opportunity to fully respond.
12             Is that understood?
13        A.   Yes, ma'am.
14        Q.   Ms. Melvin, where are you currently
15   employed?
16        A.   The Diez Group, Kansas City, LLC.
17        Q.   And what is your current title at The
18   Diez Group?
19        A.   Human resources generalist.
20        Q.   How long have you worked at The Diez
21   Group?
22        A.   Three years and three months.  Or
23   almost 3 months.
24        Q.   And what location do you work out of
25   for The Diez Group?

MCR  11880 College Blvd., Suite 405
     Overland Park, KS 66210
     800.748.7511 • 913.347.9800 • FAX 913.347.8507
COURT REPORTING + LEGAL VIDEO

Case 4:23-cv-00138-GAF  Document 30-6  Filed 01/15/24  Page 4 of 17

RICHARD MITCHELL vs                                    DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                                      December 13, 2023

Page 8

1      Q.      Where does he office?

2      A.      Dearborn, Michigan.

3      Q.      I want to ask you about orientation
4    for new hires.  You just listed that as one of your
5    job responsibilities as an HR generalist; is that
6    correct?

7      A.      Yes.

8      Q.      And what does orientation of new
9    employees entail at your location?

10     A.      New hire presentation that I go
11   through, it's a PowerPoint.  They watch safety videos
12   that are required by the company.  We go through
13   paperwork that has not been finished with their
14   onboarding.  I show them how to use the time clock,
15   how do you get the PPE out of the machine and I
16   usually take them on a plant tour.

17     Q.      Approximately, how long does the
18   orientation process take for new employees typically?

19     A.      Three to four hours.

20     Q.      Are new employees required to review
21   and acknowledge the employee handbook applicable to
22   their employment?

23     A.      Yes.

24     Q.      And when in the onboarding process are
25   new employees expected to do that?

MCR  11880 College Blvd., Suite 405
     Overland Park, KS 66210
     800.748.7541 • 913.347.8800 • FAX 913.347.8507
COURT REPORTING + LEGAL VIDEO

Case 4:23-cv-00138-GAF  Document 30-6  Filed 01/15/24  Page 5 of 17

RICHARD MITCHELL vs
THE DIEZ GROUP, LLC, et al.
DEPOSITION OF SHARON MELVIN
December 13, 2023

Page 9

1  A. Supposed to be done before they come
2  in for orientation.
3  Q. And so, logistically, how does that
4  work? Are new employees sent a link to review it
5  online or are they given a hard copy? What does that
6  look like?
7  A. We use a company called Paylocity. I
8  set them up, I fill out the employer section and it
9  sends them a link to follow with a temporary password
10 and then they go from there and answer the questions.
11 Q. Other than the employee handbook that
12 they are supposed to review and acknowledge before
13 they come in for orientation, are there any other
14 policy documents or other kind of company-issued
15 documents that new employees are expected to review
16 and acknowledge before they show up for orientation?
17 A. Yes.
18 Q. What are those?
19 A. The attendance policy, the -- trying
20 to remember what they are -- I don't remember there's
21 three of them. There's attendance policy,
22 there's -- I don't remember right off the top of my
23 head, I'm sorry. I don't do that part, so, I'm
24 sorry, I don't remember what all they are.
25 Q. Fair enough. I want to ask you about

RICHARD MITCHELL vs                                          DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                                              December 13, 2023

Page 21

1    scored on that test?
2         A.    Forty-something percent.
3         Q.    And the test, the completed test for
4    Mr. Mitchell, was that something that the company
5    retained?
6         A.    Yes.
7         Q.    Where did the company retain that
8    test?
9         A.    In his training file.
10        Q.    I understand you don't recall the
11   exact date that he took that test, but do you recall
12   anything else about Mr. Mitchell completing that
13   test, other than what he scored and the fact that he
14   did it?
15        A.    I know initially when he sat down, I
16   walked away and I went back towards the kitchen area,
17   which is where he was sitting, and he was on his cell
18   phone looking up answers.
19        Q.    And when you saw that he was on his
20   cell phone, did you say anything to him?
21        A.    No.  I notified Ryan.
22        Q.    Had Mr. Mitchell been given the
23   instruction not to use his cell phone or to look
24   anything up?
25        A.    When?  Like when he started the test?

RICHARD MITCHELL vs                                    DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                            December 13, 2023

Page 25

1  that he was taking paper off of the coil when he
2  fell.
3         Q.    And did you ask him any other
4  follow-up questions at that point?
5         A.    Yes.  I asked him what was injured.
6         Q.    And what did he say was injured?
7         A.    His shoulder.
8         Q.    Did you ask him any follow-up
9  questions other than what you've indicated so far?
10        A.    I don't remember anything else, no.
11        Q.    Did you advise Mr. Mitchell to do
12 anything, to come in to the office or to go to a
13 clinic?
14        A.    Yes.
15        Q.    What did you advise him to do?
16        A.    Stop by the office and pick up an
17 authorization to go to Concentra.
18        Q.    And do you recall, did he stop by the
19 office to pick up that authorization form?
20        A.    Yes.
21        Q.    Do you recall when he came by the
22 office to pick up that form?
23        A.    I don't remember what time, no.
24        Q.    Do you recall if it was relatively
25 close in time to when he had called you?  Or was it

RICHARD MITCHELL vs                              DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                        December 13, 2023

Page 26

```
 1   later in the day?
 2        A.    I don't remember exactly, no.
 3        Q.    Did you have any conversation with
 4   Mr. Mitchell when he came in to the office to pick up
 5   the authorization form?
 6        A.    Just advising what he was going to do
 7   when he got to the clinic.
 8        Q.    What do you mean by that?
 9        A.    He was going to have to take a
10   post-accident drug test and alcohol test and then
11   they would evaluate his injury.
12        Q.    Between the time that you spoke with
13   Mr. Mitchell on the phone and when he came in to pick
14   up an authorization form to go to the Concentra
15   clinic, was there any paperwork that you completed?
16        A.    A post accident -- or excuse me -- a
17   incident report.
18        Q.    And the incident report is a workers'
19   compensation-related form?
20        A.    No.
21        Q.    Is that an internal Diez Group form?
22        A.    Yes.
23        Q.    What kind of information does the
24   incident report require you to fill in?
25        A.    Date, time, location, what was
```

MCR  11880 College Blvd., Suite 405
Overland Park, KS 66210
800.748.7541 • 913.347.9800 • FAX 913.347.9807
COURT REPORTING + LEGAL VIDEO

Case 4:23-cv-00138-GAF   Document 30-6   Filed 01/15/24   Page 9 of 17

RICHARD MITCHELL vs                           DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                         December 13, 2023

Page 28

```
 1   pick up the authorization form?
 2        A.    Yes.
 3        Q.    Okay.  So going back to that
 4   interaction, you previously stated that you had just
 5   given him instructions on what to do when he got to
 6   the Concentra clinic.  Sounds like there was more to
 7   that conversation; is that correct?
 8        A.    Yes.
 9        Q.    So what else do you recall discussing
10   with Mr. Mitchell when he came in to pick up his
11   authorization form?
12        A.    Just those two items.
13        Q.    So you asked him when he had been
14   injured?
15        A.    Yes.
16        Q.    And what did he say?
17        A.    Well, it was a few weeks ago.  I said
18   a few weeks ago?  And then he said, well, it was
19   recently.  And then when I asked him again, it was
20   last night.
21        Q.    Okay, so just so I understand the
22   sequence correctly, when you initially asked
23   Mr. Mitchell when he had been injured, he responded a
24   few weeks ago; is that correct?
25        A.    Yes.
```

RICHARD MITCHELL vs                          DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                        December 13, 2023

Page 29

1      Q.     And what was the next question that
2  you recall asking him?
3      A.     I asked him a few weeks ago, question
4  mark.
5      Q.     And how did he respond at that time?
6      A.     He goes, yes.
7      Q.     And what was said next?  What do you
8  recall saying next?
9      A.     I advised him it's the company policy
10 to report all accidents or incidents immediately to
11 either your supervisor or HR or both.
12     Q.     And is that policy set forth in the
13 employee handbook or Employee Manual?
14     A.     Yes.
15     Q.     And so that requirement to report
16 injuries immediately, how does that apply to the
17 employees injured not in an accident, but maybe from
18 like a repetitive stress injury or something like
19 that?  What would the expectation be then as to when
20 they should report it?
21     A.     Immediately.
22     Q.     Immediately upon feeling any kind of
23 symptoms?
24     A.     Yes.
25     Q.     How many workplace injuries have you

RICHARD MITCHELL vs					DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.				December 13, 2023

Page 30

1  dealt with as an HR generalist since you have been
2  with The Diez Group?  And, again, I'm not looking for
3  a specific number, you can just ballpark it.
4       A.    About eight to 10 a year.
5       Q.    And are you the individual for The
6  Diez Group location who has responsibility for
7  interacting with your work comp insurance carrier?
8       A.    Yes.
9       Q.    So when in the process do you notify
10 your work comp adjustor of an employee injury report?
11      A.    As soon as I get the information.
12      Q.    And going back to that conversation
13 with Mr. Mitchell when he came in to pick up the
14 authorization form, I believe you gave me the
15 sequence that he initially said he had been injured a
16 few weeks ago, you asked him a few weeks ago, he
17 responded yes.  Then you advised him of the company
18 policy is to report all employee injuries
19 immediately.  Is that correct?  Do I have the
20 sequence right?
21      A.    Yes.
22      Q.    And what do you recall him saying at
23 that point?
24      A.    That's when he changed his date to
25 last night.

RICHARD MITCHELL vs                                    DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                            December 13, 2023

Page 34

1       Q.      Do you recall, did you go to the
2  portal to access that information after
3  Mr. Mitchell's initial visit at Concentra?
4       A.      When I get notified it's available,
5  yes.
6       Q.      And what was your understanding of
7  what Mr. Mitchell's diagnosis was after that initial
8  visit?
9       A.      Don't know the medical codes, but
10 along the lines of a shoulder and back strain.
11      Q.      Was he released to return to work full
12 duty?
13      A.      No.
14      Q.      Do you recall what kind of
15 restrictions?
16      A.      It had weight restrictions and I
17 believe, I think push and pull, but I'm not for sure.
18 But the weight restrictions was the one I do
19 remember.
20      Q.      And did you speak with Mr. Mitchell
21 about these restrictions?
22      A.      Yes.
23      Q.      And what do you recall from that?  Did
24 Mr. Mitchell call you or did you call him?
25      A.      I don't remember who called who.

RICHARD MITCHELL vs
THE DIEZ GROUP, LLC, et al.
DEPOSITION OF SHARON MELVIN
December 13, 2023

Page 35

1    Q.    What do you recall from that
2    conversation?
3    A.    That based on the position he holds
4    with the company, the restrictions that was provided
5    to us by the clinic we were not able to accommodate
6    completely.
7    Q.    Would the restrictions that he had
8    after that first visit with Concentra, would those be
9    considered light-duty restrictions?
10   A.    I don't remember if that was verbiage
11   on it or not.
12   Q.    Well, regardless of whether that was
13   the verbiage or not, did The Diez Group have any
14   light-duty work available at that time?
15   A.    No.
16   Q.    And so what did you inform
17   Mr. Mitchell, other than the fact that the company
18   could not accommodate all of those restrictions at
19   that time?
20   A.    I don't understand what you're asking.
21   Q.    Fair enough.  Do you recall telling
22   Mr. Mitchell anything else other than the fact that
23   there wasn't work within his restrictions available
24   for him to perform?
25   A.    No.

RICHARD MITCHELL vs					DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.				December 13, 2023

Page 38

1    the claim.
2         Q.    And Mike Berry gave you that
3    instruction during that call on May 19th of 2022?
4         A.    Yes.
5         Q.    Do you recall what time of day you
6    called Mike?
7         A.    No.
8         Q.    But I assume you called him at some
9    point after Mr. Mitchell had come in to pick up his
10   authorization form, correct?
11        A.    Correct.
12        Q.    The sticky note in the upper left-hand
13   corner, the claim number, and then with the actual
14   number and then Richard Mitchell with reference to
15   adjustor and contact information for Jeanette Shelton
16   as the adjustor, do you see where I'm talking about?
17        A.    Yes.
18        Q.    Do you recall when you wrote that
19   sticky note?
20        A.    When I called the Chubb group and
21   reported the claim.
22        Q.    And when in the sequence of events did
23   you call the Chubb group to report the claim?
24        A.    After talking to Mr. Mitchell and him
25   going to the clinic.

RICHARD MITCHELL vs                           DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                        December 13, 2023

Page 57

1                MR. FINKEL:  Can you show us

2    Plaintiffs Exhibit 9?  Can you put that on the

3    screen, please?

4                MS. PAULUS:  Yes.  That was the

5    termination form, correct?

6                MR. FINKEL:  I think it was the

7    personnel -- Personnel Action Form.

8                MS. PAULUS:  Sure, one second.  Okay.

9                MR. FINKEL:  Thank you.  Can we go

10   down to the second page?

11               MS. PAULUS:  Yes.

12   BY MR. FINKEL:

13         Q.    Sharon, on that page, you circled the

14   excessive absenteeism and you said unsatisfactory

15   probationary period, U I think it was down there.

16   When you just testified when you were asked if there

17   were any reasons you were given for termination, you

18   said Mr. Hunt didn't give you a reason, just said,

19   you know, we're terminating you.

20               So how do you explain -- how did you

21   put down these reasons?

22         A.    When I sent the text message to

23   Mitchell, I was told just to release him.

24   Afterwards, we sat down, I went and grabbed his

25   folder, his personnel folder, and asked him why so I

RICHARD MITCHELL vs                                    DEPOSITION OF SHARON MELVIN
THE DIEZ GROUP, LLC, et al.                            December 13, 2023

Page 58

1  could fill out the paperwork.
2       Q.    Asked who why?
3       A.    Matt Hunt.
4       Q.    Okay.
5       A.    And then, at that time, he instructed
6  me it's because of his attendance issues and he was
7  still under his probationary period.
8       Q.    Thank you.  Okay.
9             Couple more things.  Earlier, were you
10 present at Mr. Mitchell's deposition?
11      A.    Yes.
12      Q.    And during that deposition,
13 Mr. Mitchell says that he was paying child support
14 for I think six kids.  Do you recall that?
15      A.    Yes.
16      Q.    How many child support deductions did
17 you make for Mr. Mitchell?
18      A.    Nine.
19      Q.    Nine, okay.
20            Is it true Mr. Mitchell asked you, or
21 if you know, did he ask you or Ryan to stay on days?
22      A.    Ryan initially.
23      Q.    Okay.
24      A.    And then he asked me.
25      Q.    Okay.

MCR
11880 College Blvd., Suite 405
Overland Park, KS 66210
COURT REPORTING + LEGAL VIDEO    800.748.7511 • 913.317.8800 • FAX 913.317.8850

Case 4:23-cv-00138-GAF  Document 36-3  Filed 01/15/24  Page 17 of 17